No. _:__-cv-_____

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

IN RE: CAESARS ENTERTAINMENT OPERATING COMPANY, INC., ET AL.,

*Debtors.*

MARC J. ROWAN, DAVID B. SAMBUR, DAVID BONDERMAN, KELVIN DAVIS, GARY LOVEMAN AND ERIC HESSION,

*Petitioners.*

On Petition for Writ of Mandamus Pursuant to 28 U.S.C. § 1651
*Action Pending in the United States Bankruptcy Court for the*
*Northern District of Illinois (Case No. 15-01145 (ABG))*

## PETITION FOR WRIT OF MANDAMUS

Richard Lauter
LEWIS BRISBOIS
BISGAARD & SMITH LLP
550 West Adams Street
Suite 300
Chicago, IL 60661
Tel: (312) 463-3437

Steven M. Pesner
Abid Qureshi
Joseph L. Sorkin
AKIN, GUMP, STRAUSS,
HAUER & FELD LLP*
One Bryant Park
New York, NY 10036-6745
Tel: (212) 872-1070

Marc Wolinsky
Martin J.E. Arms
Emil A. Kleinhaus
WACHTELL, LIPTON, ROSEN
& KATZ*
51 West 52nd Street
New York, NY 10019-6150
Tel: (212) 403-1000

David A. Agay
MCDONALD
HOPKINS LLC
300 North LaSalle,
Suite 2100
Chicago, IL 60654
Tel: (312) 280-0111

Marc E. Kasowitz
David S. Rosner
Joshua Greenblatt
Daniel A. Fliman
Edward E. Filusch
KASOWITZ
BENSON TORRES
& FRIEDMAN
LLP*
1633 Broadway
New York, NY
10019
Tel: (212) 506-1700

Richard M. Strassberg
Daniel P. Roeser
GOODWIN
PROCTER LLP
The New York Times
Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800

Michael A. Pope
J. Christian Nemeth
MCDERMOTT
WILL & EMERY
LLP
227 W. Monroe St.
Chicago, IL 60606
Tel: (312) 372-2000

*Counsel for Petitioners*

*\* Pro hac vice motions to be filed*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

REASONS FOR GRANTING THE WRIT................................................................... 6

    1.   The challenged order is not effectively reviewable at the end of the case and inflicts irreparable harm.........................................................................................8

    2.   The challenged order is patently erroneous — and indeed far exceeds the proper bounds of judicial discretion and is usurpative in character................................................9

    3.   Issuing the writ is otherwise appropriate. ......................................................15

CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Abelesz* v. *OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) ..................................................................................... 6, 7, 9, 15

*Apple, Inc.* v. *Samsung Elecs. Co.*, *Ltd.*,
  No. 11-CV-018646 LHK (N.D. Cal. Oct. 22, 2013) ................................................... 9

*Bd. of Educ. of Evanston Tp. High Sch. Dist. No. 202* v. *Admiral Heating & Ventilating, Inc.*,
  104 F.R.D. 23 (N.D.Ill.1984)........................................................................................ 10

*Cheney* v. *U.S. Dist. Court for the Dist. Of Columbia*,
  542 U.S. 367 (2004)...................................................................................................... 7

*Ford* v. *Carballo*,
  577 F.2d 404 (7th Cir. 1978) ........................................................................................ 7

*In re Cowger*,
  2014 WL 318241 (Bankr. C.D. Ill. Jan. 29, 2014) ..................................................... 9

*In re Del Grosso*,
  106 B.R. 165 (Bankr. N.D. Ill. 1989) .......................................................................... 10

*In re Doctors Hosp. of Hyde Park, Inc.*,
  474 F.3d 421 (7th Cir. 2007) ........................................................................................ 13

*In re Energy Co-op., Inc.*,
  886 F.2d 921 (7th Cir. 1989) ........................................................................................ 13

*In re FiberMark, Inc.*,
   339 B.R. 321 (Bankr. D. Vt. 2006)............................................................................... 3

*In re Kollel Mateh Efraim, LLC*,
  2013 WL 2149598 (Bankr. S.D.N.Y. May 16, 2013)................................................... 13

*In re Mercedes Homes, Inc.*,
  431 B.R. 869 (Bankr. S.D. Fla. 2009) ......................................................................... 12

*In re Monus*,
  1995 WL 469694 (Bank. N.D. Ohio May 18, 1995) .................................................... 3

*In re Papandreou*,
  139 F.3d 247 (D.C. Cir. 1998)...................................................................................... 8

*In re Petition of Boerhringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*,
  745 F.3d 216 (7th Cir. 2014) ................................................................................ 7

*In re Remsen Partners, Ltd.*,
  294 B.R. 557 (Bankr. S.D.N.Y. 2003) ................................................................... 13

*In re Rhone-Poulenc Rorer, Inc.*,
  51 F.3d 1293 (7th Cir. 1995) .................................................................. 1, 2, 7, 8, 9

*In re Rickel & Assocs., Inc.*,
  272 B.R. 74 (Bankr. S.D.N.Y. 2002) ...................................................................... 3

*In re Roman Catholic Church of Diocese of Gallup*,
  513 B.R. 761 (Bankr. D. N.M. 2014) .................................................................... 14

*In re Roman Catholic Diocese of Albany, N.Y. Inc.*,
  745 F.3d 30 (2d Cir. 2014) ..................................................................................... 8

*In re St. Johnsbury Trucking Co.*,
  176 B.R. 122 (S.D.N.Y. 1994) ............................................................................... 7

*In re Se. Banking Corp.*,
  314 B.R. 250 (Bankr. S.D. Fla. 2004) .................................................................. 13

*In re Tech. for Energy Corp.*,
  56 B.R. 307 (Bankr. E.D. Tenn. 1985) ................................................................. 13

*In re Texaco Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988) .................................................................... 12

*In re Warner Commc'ns Sec. Litig.*,
  798 F.2d 35 (2d Cir. 1986) ................................................................................... 12

*In re WCI Cable, Inc.*,
  282 B.R. 457 (Bankr. D. Or. 2002) ....................................................................... 13

*Masterson* v. *Pergament*,
  203 F.2d 315 (6th Cir. 1953) ............................................................................... 12

*N.Y. Republican State Comm.* v. *Moore*,
  1989 WL 124206 (N.D.N.Y. Oct. 11, 1989) ........................................................... 8

*Ott* v. *City of Milwaukee*,
  682 F.3d 552 (7th Cir. 2012) ................................................................................. 7

*Piller* v. *Perftech, Inc.*,
    2011 WL 2293363 (N.D. Ill. June 9, 2011) ........................................................... 10

*Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*,
    390 U.S. 414 (1968) ............................................................................................ 10

*Purdy* v. *Burlington N. & Santa Fe Ry. Co.*,
    2000 WL 34251818 (D. Minn. Mar. 28, 2000) ...................................................... 8

*SEC* v. *G.C. George Sec.*,
    637 F.2d 685 (9th Cir. 1981) ................................................................................. 7

*United States* v. *Dorfman*,
    690 F.2d 1230 (7th Cir. 1982) ............................................................................... 8

*Wilk* v. *Am. Med. Ass'n*,
    635 F.2d 1295 (7th Cir. 1980) ............................................................................. 15

*Winters* v. *Travia*,
    495 F.2d 839 (2d Cir. 1974) .......................................................................... 14, 15

**Statutes**

28 U.S.C. § 1651 ........................................................................................................ 6, 7

## PRELIMINARY STATEMENT

Petitioners are six individuals who have been ordered by a Bankruptcy Court to divulge their most sensitive and personal financial information, including their tax returns and bank account statements, to a committee of creditors desiring to upset a bankruptcy settlement. Once these individuals divulge their tax returns, bank account statements and other private financial information, there is no undoing the harm — as the Bankruptcy Court itself remarked, "the cat is . . . out of the bag." Ex. 2, Sept. 14 Tr. 36:1-2.[1]

The Bankruptcy Court's extraordinary order is unprecedented and plainly wrong. As a matter of black-letter law, pre-judgment discovery regarding a defendant's wherewithal to meet a judgment generally is *not* permitted. In limited circumstances, that rule gives way when a debtor proposes to settle a claim for below fair value because the defendant cannot satisfy a judgment. But here, the exact opposite is true. The Debtors have made patently clear that, in reaching a multi-billion dollar settlement, they did *not* apply any "discount" for collectability. Accordingly, the Debtors will not present *any* evidence regarding collectability at the confirmation hearing.

The incredibly intrusive discovery ordered by the Bankruptcy Court thus has no relevance to any issue that the Bankruptcy Court will need to decide. Since the Debtors have *conceded* that their settlement must be approved (or not) based solely on the "merits" of the claims being settled, the Bankruptcy Court's decision to order broad discovery into the individuals' most private financial affairs was both "usurpative in character" and "patently

---

[1]    References to "Ex." herein refer to exhibits to the Declaration of Edward E. Filusch. Unless otherwise indicated, citations to "Dkt. No." refer to the docket in the bankruptcy case, *In re Caesars Entertainment Operating Co.*, *Inc.*, Case No. 15-01145 (Bankr. N.D. Ill.).

erroneous." *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995) (Posner, J.). The Order cannot stand.

Petitioners have filed a motion for leave to appeal simultaneously with this Petition to ensure that this Court can review and rectify the Bankruptcy Court's manifest and harmful error.

## STATEMENT OF FACTS

The proceeding below involves the bankruptcy of Caesars Entertainment Operating Co., Inc. ("CEOC"). Detailed background of the bankruptcy is not necessary to resolve this Petition. Briefly:

CEOC manages casinos and hotels in Illinois, Las Vegas and elsewhere. It is a subsidiary of Caesars Entertainment Corp. ("CEC"). CEOC (along with a number of related entities) is a debtor in bankruptcy. CEC is not.

In early 2008, investment funds managed by Apollo Global Management and TPG Capital (the "Sponsors") acquired control of CEC. Almost immediately, the financial crisis of 2008 ensued. The leisure and gaming industries were of course hard hit. In response, CEC undertook a multi-year effort to shore up CEOC's balance sheet through more than 45 capital market transactions. The transactions were intended to provide CEOC with liquidity and relief on its impending debt maturities in order to put CEOC in a position to take advantage of the forecasted turnaround in the industry. *See* Ex. 3, Dkt. No. 4220-1, at 62.

The Special Governance Committee of CEOC — comprised of independent directors — evaluated the transactions to determine whether claims exist against CEC, its affiliates, the Sponsors, and the directors and officers of CEC (including the Petitioners[2]). The Special

---

[2]     The six Petitioners are David Sambur, a principal at Apollo who served as a director of CEC and CEOC at various relevant times; Marc Rowan, a founder of Apollo who served as a director of CEC and CEOC at various relevant times; David Bonderman, a founder of TPG who served as a director of CEC and CEOC at various relevant times; Kelvin Davis, a senior execu-

(footnote continued)

Governance Committee concluded that claims do exist with respect to approximately nine of the 45 transactions (referred to as the "Challenged Transactions"), and valued the potential claims against all of the would-be defendants at between $3.2 billion and $5.8 billion. *See id.* at 29, 43.[3]

CEC, the Sponsors and Petitioners do not believe the potential claims have any merit. *See id.* at 62-66. But in an effort to resolve the dispute and allow the Debtors to emerge from bankruptcy, CEC agreed to provide contributions to the reorganization plan that CEOC has determined have an approximate value of $4.1 billion. The Sponsors' and the Petitioners' contribution to the plan, through the dilution of their direct or indirect equity in the surviving company, is valued by CEOC at over $2 billion. *See id.* at Exhibits C & F. This proposed contribution is in return for, and subject to, a release by the Debtors of CEC and other entities and individuals (including Petitioners) of all relevant causes of action. *See id.* at 1.

The Special Governance Committee of CEOC, supported by independent advisors, has determined that this contribution is fair and reasonable for the settlement of the potential claims. *See id.* at 4. Of central importance to this Petition, the Special Governance Committee's evaluation of the reasonableness of the settlement did *not* include any discount for the risk that

---

(footnote continued)

tive at TPG who served as a director of CEC and CEOC at various relevant times; Gary Loveman, CEC's Chief Executive Officer from 2003 through 2015, who also served as a director of CEC and CEOC at various relevant times; and Eric Hession, CEC's Chief Financial Officer, who also served as a director of CEOC for a short period in 2014.

[3] The Bankruptcy Court also appointed an examiner to review these potential claims against third parties. *See* Ex. 3, at 52-53. The examiner concluded that the debtors hold reasonable or strong claims against third parties in the range of $3.6 billion to $5.1 billion. *See id.* at 54. The Examiner's report has no evidentiary value. It "is hearsay," *In re Rickel & Assocs., Inc.* 272 B.R. 74, 87 (Bankr. S.D.N.Y. 2002), and it has "no binding effect," *In re FiberMark, Inc.*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006); *see also In re Monus*, 1995 WL 469694, at *9 (Bank. N.D. Ohio May 18, 1995) (examiner report "lack[ed] a guarantee of trustworthiness" necessary for admission as evidence).

the claims might not be collectable from the putative defendants. CEOC determined that "[b]ecause of CEC's strong performance and the number and nature of claims against other entities and individuals with great wealth, collectability [is] no longer expected to be an issue." Ex. 4, Dkt. No. 4792-18, at 6. That is, CEOC did *not* discount or adjust the amount that it determined to be a fair and reasonable settlement of the potential claims by the Debtors against third parties (including Petitioners) based on any concern about collecting from them.

More than three-quarters of CEOC's capital structure — $14 billion out of $18 billion — supports the proposed plan of reorganization. But the Official Committee of Second Lien Priority Noteholders (the "Second Lien Committee") does not. One of the arguments the Second Lien Committee has made in opposing the plan is that the $4.1 billion value obtained by CEOC for the release of the potential claims against third parties is not fair and reasonable because the claims are worth more, much more, than $3.2 billion to $5.8 billion.

Negotiations ensued before a mediator. Midstream in the mediation, and in connection with the plan confirmation hearing, the Second Lien Committee, on June 28, 2016, propounded subpoenas to Petitioners — some of the same people who were negotiating in the mediation.[4] The subpoenas demanded a vast array of highly sensitive personal financial information, requiring Petitioners to turn over (among other things) several years of tax returns (which include social security numbers), bank account statements, investment statements, and ownership data on art, stock, real property, or other assets tangible or intangible. *See* Ex. 6 (subpoena).

Petitioners objected to the subpoenas due to their intrusive and harassing nature, the fact that significant responsive information is publicly available, and the complete irrelevance of the

---

[4] The Court-appointed mediator (a former federal district judge) has since resigned, citing the Bankruptcy Court's "atypical views of a mediation process." Ex. 5, Dkt. No. 4885-1.

information demanded to plan confirmation.  *See* Ex. 7 (objections to subpoena).  Nonetheless, the Petitioners engaged in a series of meet and confers with the Second Lien Committee, in which the Petitioners agreed to produce information establishing that they benefit from broad indemnities backed not only by CEC but also by the Apollo and TPG funds that participated in the Caesars investment and Apollo and TPG themselves, in addition to substantial insurance. Rejecting any compromise, the Second Lien Committee moved to compel.  *See* Ex. 8 ¶¶ 8-11 (Ordower Declaration).

The Bankruptcy Court heard the motion to compel last Wednesday, September 14, 2016. At that hearing, CEOC again explicitly represented to the court that it did not apply a "discount" to the potential claims based on any collectability concern, and committed that the Debtors would not present *any* evidence or argument on the topic of collectability at the confirmation hearing.  Ex. 2, Sept. 14 Tr. 5:22-6:6.  The Debtors' counsel confirmed repeatedly that the settlement was exclusively a "merits-based settlement" and would be defended solely on that basis, such that "collectability is not an issue" for the confirmation hearing or for pre-hearing discovery.  *Id.* at 6:7-8, 8:7, 8:24-9:9.3.

Notably, the Bankruptcy Court agreed that if the Debtors would "stipulate" that any judgment could be collected from each of the individuals, then the court "could deny the motion and send you all home."  *Id.* at 7:18-19.  Although the Debtors' counsel would not stipulate to the open-ended proposition that the Debtors "could necessarily collect a full judgment, whatever that judgment would be, against *any one of these particular . . . individuals*" (*id.* at 7:10-13), counsel was emphatic that the Debtors — which have the burden of proof — would not "argue this collectability issue" (*id.* at 7:7-8) and that the Second Lien Committee was "trying to make our confirmation case about something that it's not."  *Id.* at 8:11-13.

The Bankruptcy Court nonetheless granted the motion to compel. After characterizing certain parts of the subpoenas as "nuts" (*id*. at 11:2), "crazy" (*id.* at 14:3) and "really overbroad" (*id*. at 11:10-11), the Court went on to enforce other parts of the subpoenas that are equally problematic. In particular, the Court concluded that the individuals would have to produce, among other things, their personal tax returns (*id*. at 13:1) and the statements for any accounts in which they have an interest (*id*. at 13:2-5). In response to counsel's argument that the intrusive discovery was unnecessary in light of the fact that the Debtors did not discount the settlement for collectability, the Court replied that perhaps it should just "deny confirmation now." *Id*. at 22:3-4. Counsel then noted that the hearing was about the subpoenas, not plan confirmation, to which the Court responded that the individuals could avoid the discovery if they agreed to forgo being "released under the plan." *Id*. at 22:19-20. The Court concluded: "these folks are going to have to pony up the paper." *Id*. at 23:3-4.

In sum, the Order of the Bankruptcy Court, if left undisturbed, would require the individuals to produce their most sensitive, private personal financial information to all parties to the bankruptcy that are subject to the governing protective order. This will include hundreds if not thousands of individuals at dozens of legal and financial advisory firms, including many firms that do business with Apollo or TPG and firms that are adverse to Apollo or TPG in litigation or business situations. Under the challenged order, production "must be commenced" by this Wednesday, September 21, "must be made on a rolling basis" and "must be completed" by next Wednesday, September 28, 2016. Ex. 1 ¶ 3.

## REASONS FOR GRANTING THE WRIT

Under controlling Seventh Circuit precedent, "[t]hree conditions must be satisfied for a writ to issue" under the All Writs Act (28 U.S.C. § 1651). *Abelesz* v. *OTP Bank*, 692 F.3d 638, 652 (7th Cir. 2012). First, the challenged order must be one that "is not effectively reviewable at

6

the end of the case, that is, without the writ the party will suffer irreparable harm." *Id*. "Second, the party seeking the writ must demonstrate a clear right to the writ." *Id*. "Last, the issuing court must be satisfied that issuing the writ is otherwise appropriate." *Id*.; *accord, e.g.*, *Rhone-Poulenc*, 51 F.3d at 1295.

"These hurdles, however demanding, are not insuperable." *Abelesz*, 692 F.3d at 652 (*quoting Cheney* v. *U.S. Dist. Court for the Dist. Of Columbia*, 542 U.S. 367, 381 (2004)); *see also In re Petition of Boerhringer Ingelheim Pharm., Inc. & Boehringer Ingelheim Int'l GmbH, in Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 745 F.3d 216, 219-20 (7th Cir. 2014) ("mandamus provides a 'safety valve' enabling appellate review" of "exceptional" discovery orders where the requisite conditions are satisfied) (Posner, J.); *Ott* v. *City of Milwaukee*, 682 F.3d 552, 554-55 (7th Cir. 2012) (leave to appeal or mandamus can be appropriate vehicles for review of discovery orders directing the production of information).

It is likewise settled that district courts have full power to grant mandamus under the All Writs Act. *See Ford* v. *Carballo*, 577 F.2d 404, 407 (7th Cir. 1978). As the Seventh Circuit has stated, a District Court is to apply the All Writs Act "flexibly" to "achiev[e] the ends of justice entrusted to it." *Id.*; *see also SEC* v. *G.C. George Sec.*, 637 F.2d 685, 688 (9th Cir. 1981) ("A district court's powers under [28 U.S.C.] § 1651 should be broadly construed.") (internal quotation and citation omitted); *In re St. Johnsbury Trucking Co.*, 176 B.R. 122, 125-26 (S.D.N.Y. 1994) (granting mandamus ordering bankruptcy court to vacate an order requiring production of privileged documents).

As shown below, all three conditions for a writ of mandamus are satisfied.

1.      **The challenged order is not effectively reviewable at the end of the case and inflicts irreparable harm.**

This first condition for a writ of mandamus is satisfied where "the order, or its circumstances, would make an end-of-the-case appeal ineffectual or leave legitimate interests unduly at risk." *Rhone-Poulenc*, 51 F.3d at 1295.

That is undeniably the case here. Even in far less extreme circumstances, courts have recognized that disclosure of sensitive personal financial information can cause irreparable harm. *See, e.g.*, *Purdy* v. *Burlington N. & Santa Fe Ry. Co.*, 2000 WL 34251818, at *5 (D. Minn. Mar. 28, 2000) (threat of disclosure of both salary information and social security numbers constituted irreparable harm); *N.Y. Republican State Comm.* v. *Moore*, 1989 WL 124206, at *3 (N.D.N.Y. Oct. 11, 1989) (compliance with financial disclosure requirements in Ethics in Government Act would constitute irreparable harm in action involving privacy challenge to the Act); *see also In re Roman Catholic Diocese of Albany, N.Y. Inc.*, 745 F.3d 30, 35-36 (2d Cir. 2014) (discovery of invasive personal information threatened irreparable harm warranting mandamus); *cf. In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("Disclosure [of privileged material] followed by appeal after final judgment is obviously not adequate . . . — the cat is out of the bag."); *United States* v. *Dorfman*, 690 F.2d 1230, 1232 (7th Cir. 1982) (order unsealing wiretap materials immediately appealable because privacy interests protected by sealing order "would be gone forever" following disclosure).

Disclosure of personal financial information of the kind involved here even to a small group of strangers thus constitutes irreparable harm as a matter of law. But here, Petitioners have been ordered to provide their most sensitive financial information, including their tax returns, bank statements and other documents with their social security and account numbers, to hundreds, if not thousands, of lawyers and other advisors. Once divulged, no appeal "at the end

of the case" can undo the harm. And this is to say nothing of the manifest risk that — in the hands of hundreds or thousands of people, at firms around the world — this sensitive and highly interesting information would somehow "leak."[5] Moreover, the protections of the confidentiality order could fall away at trial. When the issue of how information subject to the protective order came up previously, the Bankruptcy Court has stated: "I'm not going to clear the courtroom and shut off the telephone connection for this." Ex. 14., Aug. 17, 2016 Tr. 26:12-14.

The irreparable harm condition to the issuance of mandamus is plainly satisfied.

**2.      The challenged order is patently erroneous — and indeed far exceeds the proper bounds of judicial discretion and is usurpative in character.**

Second, as noted, Petitioners "must demonstrate a clear right to the writ." *Abelesz*, 692 F.3d at 652; *see also Rhone-Poulenc*, 51 F.3d at 1295. This condition is satisfied where the challenged order "so far exceed[s] the proper bounds of judicial discretion as to be legitimately considered usurpative in character, or in violation of a clear and indisputable legal right, or, at the very least, patently erroneous." *Rhone-Poulenc*, 51 F.3d at 1295.

Here, the bankruptcy court's error is clear. It is a well-established general rule that — unless and until there is a *judgment* against an individual — discovery of the individual's ability to meet a judgment is out of bounds. Courts in this district have repeatedly enforced this rule, holding that "pre-judgment discovery about a defendant's financial affairs is *prohibited* when the purpose is to determine whether a final judgment will be collectible rather than to establish an element of liability." *In re Cowger*, 2014 WL 318241, at *5 (Bankr. C.D. Ill. Jan. 29, 2014)

---

[5]      In one highly publicized case in the U.S. District Court for the Northern District of California, unauthorized individuals obtained highly sensitive trade secrets in breach of a protective order. *See* Transcript, *Apple, Inc.* v. *Samsung Elecs. Co.*, *Ltd.*, No. 11-CV-018646 LHK (N.D. Cal. Oct. 22, 2013), ECF No. 2581. Upon questioning by the court, the counsel at fault conceded that his firm had "made a mistake." *Id.* at 45-46.

(emphasis added) (citing *Piller* v. *Perftech, Inc.*, 2011 WL 2293363, at *3-4 (N.D. Ill. June 9, 2011); *Bd. of Educ. of Evanston Tp. High School Dist. No. 202* v. *Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 33 (N.D. Ill. 1984)).

Deviating from this black-letter prohibition, the Bankruptcy Court cited a single decision from the 1960s, *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414 (1968), which mentioned that "possible difficulties of collecting on [a] judgment" can be a relevant factor in evaluating a bankruptcy settlement. *See* Ex. 2, Sept. 14 Tr. 9:8-12 (referencing 390 U.S. at 424). Undoubtedly that is the case, but that is indisputably of no moment in *this* case.

Akin to a class action settlement, the debtor has the burden of proof in showing that a bankruptcy settlement is fair and reasonable. *See, e.g.*, *In re Del Grosso*, 106 B.R. 165, 167-68 (Bankr. N.D. Ill. 1989). To meet that burden of proof, the debtor may seek to contend that the settlement — although lower than it otherwise would have been — is nevertheless fair and reasonable because of collectability concerns. In *that* circumstance, because collectability is put at issue by the debtor, discovery as to collectability (properly tailored) may be appropriate.

But in *this* bankruptcy settlement, the Debtors' contemporaneous documents establish that CEOC's board evaluated and approved the settlement without regard to collectability. The board was told that collectability was no longer "an issue," and so it evaluated the settlement solely on the merits. Ex. 4, Dkt. 4792-18 at 6. This was expressly confirmed by counsel for the Debtors at the hearing on the motion to compel. In response to the bankruptcy court's questioning, counsel made clear in no uncertain terms that, in agreeing to the settlement, CEOC's board of directors "did *not* discount for collectability." Ex. 2, Sept. 14 Tr. 5:24-25. The Debtors also agreed *not* to argue at the confirmation hearing for any "discounts for collectability"

10

or "that any of these defendants don't have the ability to pay." *Id.* at 5:24-6:5. As a result, collectability against Petitioners has no bearing on the evaluation of the settlement, and discovery on that topic is plainly prohibited.

In nevertheless directing intrusive and wide-ranging disclosure of the Petitioners' most sensitive financial information, the Bankruptcy Court opined that it did not know whether one of the individuals "potentially has . . . six old masters displayed in his garage that could be grabbed and sold." Ex. 2, Sept. 14 Tr. 18:15-16. With respect, if all of Petitioners' entire houses were wallpapered in original Rembrandt canvases, that is no *legitimate* concern. The Debtors are not taking a discount for collectability. They are not seeking to argue that any risk as to collectability warrants approval of the settlement. In issuing its order in the face of those explicit and unequivocal representations, the bankruptcy court patently erred.

The bankruptcy court further stated that its Order was animated by "these people . . . getting something for nothing" where "there is something to be had here" in light of the individuals' personal wealth. Ex. 2, Sept. 14 Tr. 18:19-21. At a previous hearing, the bankruptcy judge likewise invoked the personal wealth of several of the Petitioners, asking why they were not directly funding the settlement even though "some of them are very well to do." Ex. 9, Aug. 25, 2016 Tr. 185:25-186:1-2.[6] The Bankruptcy Court's focus on the source of funding for the settlement only compounded its error. First, any question about whether the right entities or people are funding the settlement is an issue for the confirmation hearing. It has no

---

[6]     The Bankruptcy Court focused on the wealth of a few CEC directors even though: (a) none of the individuals were personally parties to the Challenged Transactions; and (b) the assets that were the subject of the claimed fraudulent transfers still reside at companies that have agreed to settle with CEOC, including CEC, and, in fact, under the plan, the companies are contributing those assets back for the benefit of CEOC's creditors.

bearing on the enforceability of the Second Lien Committee's subpoenas. For purposes of the subpoenas, what matters is that the Debtors are *not* defending any aspect of their settlement — including the source of funding — based on any individual's ability to pay.

Moreover, the fact that none of the Petitioners are directly contributing (but, instead, are indirectly contributing) their own personal assets to the settlement does not provide a basis for rejecting the plan. Bankruptcy courts regularly approve settlements in which directors and officers are released on the basis of payments made by their indemnitors. *See, e.g.*, *In re Mercedes Homes, Inc.*, 431 B.R. 869, 884 (Bankr. S.D. Fla. 2009) (approving release of claims against directors and officers of debtor where the individuals released were indemnified by the debtor); *In re Texaco Inc.*, 84 B.R. 893, 904-05 (Bankr. S.D.N.Y. 1988) (approving release of liability of directors and officers in part because they were indemnified by the debtor). This is also true outside the bankruptcy context, where courts evaluate class action settlements based on the adequacy of the consideration being paid, not who is paying. *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("If the total compensation to class members is fair, reasonable, and adequate, the court is not required to supervise how the defendants apportion liability for that compensation among themselves."); *Masterson* v. *Pergament*, 203 F.2d 315, 330 (6th Cir. 1953) ("The general rule is that the release of noncontributing defendants is no reason for disapproving a compromise.").[7]

---

[7]     At one point, the Bankruptcy Court acknowledged that the source of the funding for the settlement did not matter. Ex. 10, Jun. 7, 2016 Tr. 66:13-23 ("I don't know that it matters terribly how you divide up that contribution and you say, well, if there's this particular officer of CEC, what did he or she provide? You know, if somebody sued me and all of my staff, and I wanted to settle it on behalf of all of us by paying some money, that would be a perfectly enforceable contract, even though my law clerks didn't pay anything, and I fronted all the money for the settlement. I don't see why that would be a problem, and why we'd have to divvy it up that way.").

Accordingly, under settled law, the question for the Bankruptcy Court in evaluating the Debtors' settlement is whether the settlement that *was* arrived at — which, as noted, did *not* take any discount for collectability — is fair and reasonable from the perspective of the debtors. *See, e.g.*, *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007) (settlement may be approved as fair to the estate if it "falls within the reasonable range of possible litigation outcomes"); *In re Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989) ("[T]he job of the reviewing court is to determine whether 'the value of the proposed compromise distribution is reasonably equivalent to the value of the potential claim.'"). And where, as here, the debtors have committed that they will present no evidence regarding collectability risk, the settlement should be approved if it is fair and reasonable *despite* there being no such collectability risk.

In similar situations where debtors have defended settlements based solely on the merits of the settled claims and without regard to collectability, courts have consistently recognized that evidence regarding collectability is unnecessary and irrelevant. *See, e.g.*, *In re Kollel Mateh Efraim, LLC*, 2013 WL 2149598, at *5 (Bankr. S.D.N.Y. May 16, 2013) (approving contemplated settlement despite lacking information on collectability as plaintiff's "principal reason for settling . . . is his judgment that he will lose," not that the claims are not collectable); *In re Se. Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) (collectability was "not relevant" in evaluating settlement).[8] Thus, as these decisions recognize, the only reason to evaluate collectability is when the settlement of claims is at a "discount" to fair value. Where

---

[8]     *See also, e.g.*, *In re Remsen Partners, Ltd.*, 294 B.R. 557, 563 (Bankr. S.D.N.Y. 2003) (collectability "not an issue"); *In re WCI Cable, Inc.*, 282 B.R. 457, 470 (Bankr. D. Or. 2002) (collectability "uncontested"); *In re Tech. for Energy Corp.*, 56 B.R. 307, 317 (Bankr. E.D. Tenn. 1985) ("risk of collectibility is not a factor.").

there is no "discount," the Court and any objectors only need to focus on whether the claims at issue are being settled at fair value based on their merits. That is the case here.

The cases cited by the Second Lien Committee in the court below support this fundamental point. For example, in *Fontainebleau*, recipients of a subpoena similarly refused to disclose financial information in a bankruptcy proceeding. *See* Ex. 11, Dkt. No. 4792-21 at 29:5-10. The court granted a protective order blocking the disclosure of the information, upon the proviso that debtors would not invoke collectability at trial. *See id.* Here, as noted, the Debtors have already represented to the court that they will not invoke collectability as an issue at the confirmation hearing. Thus, there is no basis for *any* inquiry into the financial resources of Petitioners — let alone the intrusive inquiry the Bankruptcy Court directed.[9]

Parallel is the Second Circuit's grant of mandamus in *Winters* v. *Travia*, 495 F.2d 839 (2d Cir. 1974). There, the district court ordered a physical and mental examination of a plaintiff seeking damages for being forcibly medicated. *Id.* at 840. The Court of Appeals vacated the order because, like here, the plaintiff was "willing to abandon any claim" that her "present or anticipated physical or mental disability or condition was caused by the [challenged] treatment." *Id.* at 840-41. Her concession took the issue out of controversy, justifying the grant of mandamus prohibiting the intrusive examination from going forward. *Id.* at 841. As with this case, immediate relief was required to "correct an abuse of discretion in ordering" the discovery.

---

[9]  The other case cited by the Second Lien Committee is no more helpful to its position. *In re Roman Catholic Church of Diocese of Gallup* acknowledged that "[i]n general, normal civil procedure discovery regarding a defendant's financial condition is not permitted before entry of judgment." 513 B.R. 761, 765 (Bankr. D.N.M. 2014). Although the *Gallup* court noted that discovery of financial information can be justified when collectability is put at issue — which has not occurred here — the court was "reluctant to open those particular flood gates." *Id.* at 766. Thus, the court largely rejected the discovery sought and limited the requests to: (a) information about insurance, and (b) financial information on the defendant's website. *Id.*

14

*Id.*; *see also Wilk* v. *Am. Med. Ass'n*, 635 F.2d 1295, 1298 (7th Cir. 1980) (Wisdom, J.) (concluding that mandamus was warranted to vacate the district court's refusal to modify a discovery order under the then-applicable rules that would have caused a collateral litigant to be burdened with extensive and unnecessary discovery).

The Bankruptcy Court's error is clear and palpable. So the second mandamus factor is likewise satisfied.

**3.        Issuing the writ is otherwise appropriate.**

Finally, there is every reason for issuance of the writ here. The extreme order of the Bankruptcy Court is entirely unprecedented. No court has ever ordered individuals to produce the kind of personal and sensitive financial information ordered to be produced here where there is no judgment and where a bankruptcy settlement is explicitly *not* predicated on collectability risk. But make no mistake: in the absence of prompt relief making clear that this is not a proper exercise of judicial authority, this highly-publicized bankruptcy proceeding will become the template for unsatisfied creditors everywhere to do what the Second Lien Committee is doing here: harass the individuals on the other side of the negotiating table to acquiesce to their demands — else risk disclosure of their most sensitive personal financial secrets.

*Abelesz* is instructive. There, the Court granted mandamus to correct a district court's patent error in exercising general jurisdiction over certain foreign banks. In doing so, the Seventh Circuit noted that "[u]nder the district court's reasoning," virtually any other similarly-situated party would find itself in the same boat. 692 F.3d at 653. So too here.

## CONCLUSION

For the foregoing reasons, this Court should issue a writ of mandamus vacating the challenged Order.

Dated: September 19, 2016
Chicago, Illinois

Respectfully submitted,

MCDONALD HOPKINS LLC

By:   \s\David A. Agay_____
      David A. Agay

300 North LaSalle, Suite 2100
Chicago, Illinois  60654
(312) 280-0111

KASOWITZ BENSON TORRES &
    FRIEDMAN LLP

  Marc E. Kasowitz
  David S. Rosner
  Joshua Greenblatt
  Daniel A. Fliman
  Edward E. Filusch
  *Pro Hac Vice Motions To Be Filed*

1633 Broadway
New York, New York  10019
(212) 506-1700

*Attorneys for David Bonderman and
Kelvin Davis*

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:   \s\Richard Lauter_____
      Richard Lauter

550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3437

WACHTELL, LIPTON, ROSEN & KATZ

  Marc Wolinsky
  Martin J.E. Arms
  Emil A. Kleinhaus
  *Pro Hac Vice Motions To Be Filed*

51 West 52nd Street
New York, New York  10019-6150
(212) 403-1000

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

  Steven M. Pesner
  Abid Qureshi
  Joseph L. Sorkin
  *Pro Hac Vice Motions To Be Filed*

One Bryant Park
New York, New York  10036-6745
(212) 872-1070

*Attorneys for Marc J. Rowan and David B. Sambur*

16

GOODWIN PROCTER LLP

MCDERMOTT WILL & EMERY LLP

By:   \s\Richard M. Strassberg
     Richard M. Strassberg
     Daniel P. Roeser

By:   \s\J. Christian Nemeth
     Michael A. Pope
     J. Christian Nemeth

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

227 W. Monroe Street, #4400
Chicago, Illinois 60606-5096
(312) 372-2000

*Attorneys for Gary Loveman*

     Timothy W. Walsh
     Monica S. Asher
     *Pro Hac Vice Motions To Be Filed*

340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

*Attorneys for Eric Hession*