## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IN RE: CAESARS ENTERTAINMENT OPERATING COMPANY, INC., ET AL.,

*Debtors.*

MARC J. ROWAN, DAVID B. SAMBUR, DAVID BONDERMAN, KELVIN DAVIS, GARY LOVEMAN AND ERIC HESSION,

*Movants.*

On Appeal from the United States Bankruptcy Court for the
Northern District of Illinois (Goldgar, J.)
Case No. 15-01145

## EMERGENCY MOTION FOR STAY PENDING APPEAL
## AND PETITION FOR A WRIT OF MANDAMUS

Richard Lauter
LEWIS BRISBOIS
BISGAARD & SMITH LLP
550 West Adams Street
Suite 300
Chicago, IL 60661
Tel: (312) 463-3437

Steven M. Pesner
Abid Qureshi
Joseph L. Sorkin
AKIN, GUMP, STRAUSS,
HAUER & FELD LLP*
One Bryant Park
New York, NY 10036-6745
Tel: (212) 872-1070

Marc Wolinsky
Martin J.E. Arms
Emil A. Kleinhaus
WACHTELL, LIPTON, ROSEN
& KATZ*
51 West 52nd Street
New York, NY 10019-6150
Tel: (212) 403-1000

David A. Agay
MCDONALD
HOPKINS LLC
300 North LaSalle,
Suite 2100
Chicago, IL 60654
Tel: (312) 280-0111

Marc E. Kasowitz*
David S. Rosner*
Joshua Greenblatt
Daniel A. Fliman
Edward E. Filusch
KASOWITZ
BENSON TORRES
& FRIEDMAN LLP
1633 Broadway
New York, NY
10019
Tel: (212) 506-1700

Richard M. Strassberg
Daniel P. Roeser
GOODWIN
PROCTER LLP
The New York Times
Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800

Michael A. Pope
J. Christian Nemeth
MCDERMOTT
WILL & EMERY
LLP
227 W. Monroe St.
Chicago, IL 60606
Tel: (312) 372-2000

*Counsel for Movants*

* Pro hac vice motions pending

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 3

RELIEF REQUESTED............................................................................................ 7

ARGUMENT .......................................................................................................... 7

    1.   The Individuals have strong grounds to obtain relief from the District Court......................8

    2.   Irreparable harm will result if a stay is denied..................................................................12

    3.   The comparative harm to the Committee is non-existent or minimal. ...............................14

    4.   The public interest favors a stay. ......................................................................................15

CONCLUSION........................................................................................................ 15

**Cases**                                                                                            **Page**

*Apple, Inc.* v. *Samsung Elecs. Co., Ltd.*,
No. 11-CV-018646 LHK (N.D. Cal. Oct. 22, 2013) ....................................................... 14 n.8

*Bd. of Educ. of Evanston Tp. High School Dist. No. 202* v. *Admiral Heating and Ventilating, Inc.*,
104 F.R.D. 23 (N.D. Ill.1984) ..................................................................................... 8

*Dickson* v. *Nat'l Maint. & Repair of Ky., Inc.*,
2011 WL 2610195 (W.D. Ky. July 1, 2011) ..................................................................... 8 n.3

*Dunkin' Donuts Franchised Rests. LLC* v. *Grand Cent. Donuts, Inc.*,
2009 WL 973363 (E.D.N.Y. Apr. 9, 2009) .............................................................. 15

*In re A & F Enters., Inc. II*,
742 F.3d 763 (7th Cir. 2014) ................................................................................... 7

*In re Cowger*,
2014 WL 318241 (Bankr. C.D. Ill. Jan. 29, 2014) ................................................... 8

*In re Del Grosso*,
106 B.R. 165 (Bankr. N.D. Ill. 1989) ....................................................................... 10

*In re Dental Profile, Inc.*,
2010 WL 431590 (N.D. Ill. Feb. 1, 2010) .......................................................... 12 n.6

*In re Ex Parte Shagang Shipping Co., Ltd.*,
2014 WL 1744264 (S.D.N.Y. Apr. 28, 2014) .................................................... 8 n.3

*In re Glitnir Bank hf*,
2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) ............................................ 15

*In re Gould*,
977 F.2d 1038 (7th Cir. 1992) ......................................................................... 12 n.5

*In re Kollel Mateh Efraim, LLC*,
2013 WL 2149598 (Bankr. S.D.N.Y. May 16, 2013)........................................... 11

*In re Lott*,
139 F. App'x 658 (6th Cir. 2005) ..................................................................... 13 n.7

*In re Papandreou*,
139 F.3d 247 (D.C. Cir. 1998).......................................................................... 13 n.7

*In re Remsen Partners, Ltd.*,
 294 B.R. 557 (Bankr. S.D.N.Y. 2003) ............................................................... 11 n.4

*In re Roman Catholic Diocese of Albany, N.Y. Inc.*,
 745 F.3d 30 (2d Cir. 2014) ............................................................................ 13 n.7

*In re Se. Banking Corp.*,
 314 B.R. 250 (Bankr. S.D. Fla. 2004) ..................................................................... 11

*In re Tech. for Energy Corp.*,
 56 B.R. 307 (Bankr. E.D. Tenn. 1985) .............................................................. 11 n.4

*In re WCI Cable, Inc.*,
 282 B.R. 457 (Bankr. D. Or. 2002) .................................................................. 11 n.4

*Lincoln Elec. Co. v. MPM Techs., Inc.*,
 2009 WL 2413625 (N.D. Ohio Aug. 5, 2009) ..................................................... 8 n.3

*N.Y. Republican State Comm. v. Moore*,
 1989 WL 124206 (N.D.N.Y. Oct. 11, 1989) ............................................................ 13

*Piller v. Perftech, Inc.*,
 2011 WL 2293363 (N.D. Ill. June 9, 2011) .............................................................. 8

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
 390 U.S. 414 (1968) ............................................................................................. 10

*Purdy v. Burlington N. & Santa Fe Ry. Co.*,
 2000 WL 34251818 (D. Minn. Mar. 28, 2000) ....................................................... 13

*Ranney-Brown Distribs., Inc. v. E. T. Barwick Indus., Inc.*,
 75 F.R.D. 3 (S.D. Ohio 1977) ................................................................................. 8

*Ruehman v. Vill. of Palos Park*,
 842 F. Supp. 1043 (N.D. Ill. 1993) ....................................................................... 10

*Saenz v. Lovington Mun. Sch. Dist.*,
 2015 WL 1906140 (D.N.M. Apr. 6, 2015) ............................................................... 9

*United States v. Dorfman*,
 690 F.2d 1230 (7th Cir. 1982) ........................................................................ 13 n.7

*Universal Brands, Inc. v. Philip Morris Inc.*,
 546 F. 2d 30 (5th Cir. 1977) .................................................................................. 9

*Wolf* v. *FirstMerit Bank, N.A*,
  535 B.R. 772 (N.D. Ill. 2015) ............................................................................................... 12

**<u>Statute</u>**

28 U.S.C. § 158(a) ........................................................................................................................ 12

# INTRODUCTION

Marc J. Rowan, David B. Sambur, David Bonderman, Kelvin Davis, Gary Loveman and Eric Hession (together, the "Individuals") respectfully request an emergency stay pending disposition of their motion for leave to appeal, appeal on the merits, and petition for a writ of mandamus. The appeal and mandamus petition seek review of an order that would require the Individuals to produce extremely sensitive and personal financial information — including their tax returns — to a committee of hedge funds and other creditors seeking to upset a settlement in the bankruptcy of Caesars Entertainment Operating Company, Inc. ("CEOC," together with affiliated debtors, the "Debtors"). Under the Bankruptcy Court's order, production "must be completed" by **Wednesday, September 28, 2016**. Ex. 1, Dkt. No. 4925 ¶ 3.[1]

In light of the emergency, the Individuals respectfully request: (1) an interim stay to allow for full briefing and adjudication of the motion for a stay pending appeal; and (2) a stay pending resolution of the motion for leave to appeal, the appeal and the mandamus petition.

A stay is warranted. *First*, the Individuals have strong grounds for relief from this Court. The supposed purpose of the subpoenas served by the Official Committee of Second Priority Noteholders (the "Committee") is to determine whether the Individuals can meet a potential judgment. Under black-letter law, however, such pre-judgment discovery regarding a defendant's wherewithal to meet a judgment is *not* permitted. Although that general rule gives way in limited circumstances when a bankrupt debtor proposes to settle a claim for below fair value based on "collectability" concerns, this is not such a case. The Debtors here have made

---

[1] References to "Ex." herein refer to exhibits to the Declaration of Edward E. Filusch filed on September 22, 2016. Citations to "Dkt. No." refer to the docket in the bankruptcy case, *In re Caesars Entertainment Operating Co.*, *Inc.*, Case No. 15-01145 (Bankr. N.D. Ill.).

patently clear that, in reaching a proposed multi-billion dollar settlement, they did *not* apply any "discount" on the basis of collectability risk. The Debtors have likewise committed not to present *any* evidence regarding collectability at the confirmation hearing.

As a matter of law, the incredibly intrusive discovery ordered by the Bankruptcy Court has no relevance to any issue that will actually be presented to the Bankruptcy Court. The Bankruptcy Court's conclusion that such discovery is warranted — even when the Debtors have *conceded* that collectability risk provides *no* support for the settlement — was a manifest error of law that should be corrected either through an appeal or a writ of mandamus.

*Second*, the Individuals will suffer irreparable harm if a stay is denied. As the Bankruptcy Court observed, once the Individuals produce the highly sensitive information sought by the Committee, "then the cat is sort of out of the bag." Ex. 2, Sept. 14 Tr. 36:1-2. Absent a stay, the Individuals will have to produce the requested information to the dozens of firms and thousands of individuals subject to the protective order in the bankruptcy case. Contrary to the Bankruptcy Court's conclusion, a protective order will not remedy this harm. It will only limit — to a very large number — the people who will have access to the most private financial information the Individuals possess; the harm from the disclosure of this information to litigation adversaries with no right to the information remains.

*Third*, there will be no harm to the Committee if a stay is granted. In light of the Debtors' commitment not to invoke collectability as part of their plan confirmation case, the Committee has no legitimate need for the Individuals' tax returns, bank accounts and other highly sensitive information. Moreover, even if the Committee had a valid reason for seeking this information, Committee counsel — which has more than 60 lawyers working on this bankruptcy case — is more than capable of incorporating later-produced information into a trial

scheduled to begin on *January 17, 2017*. A brief delay in production can easily be remedied; however, the harm from needless production of private information is irreparable.

*Fourth*, a stay is in the public interest. By its terms, the Order would require broad production of extremely sensitive personal information, including tax returns. There is a public interest in preventing unnecessary discovery of this kind of information. Moreover, the Bankruptcy Court's misapplication of the applicable standard, if allowed to stand, would dissuade settlements in bankruptcy proceedings by subjecting people who settle with a debtor to intrusive discovery of private and sensitive (but irrelevant) information.

## BACKGROUND

This appeal and petition arise out of the bankruptcy of CEOC and affiliates. CEOC operates casinos and hotels in Nevada, Illinois and elsewhere. It is a subsidiary of Caesars Entertainment Corp. ("CEC"). CEOC and certain subsidiaries are in bankruptcy. CEC is not.[2]

In early 2008, investment funds managed by Apollo Global Management ("Apollo") and TPG Capital ("TPG") (collectively, the "Sponsors") acquired control of CEC. Almost immediately, the financial crisis ensued. The leisure and gaming industries were hard hit. In response, CEC undertook a multi-year effort to shore up CEOC's balance sheet through more than 45 capital market transactions. The transactions were intended to provide CEOC with liquidity and relief on its impending debt obligations, and place it in position to take advantage

---

[2]     The six Individuals are David Sambur, a principal at Apollo who served as a director of CEC and CEOC at various relevant times; Marc Rowan, a founder of Apollo who served as a director of CEC and CEOC at various relevant times; David Bonderman, a founder of TPG who served as a director of CEC and CEOC at various relevant times; Kelvin Davis, a senior executive at TPG who served as a director of CEC and CEOC at various relevant times; Gary Loveman, CEC's Chief Executive Officer from 2003 through 2015, who also served as a director of CEC and CEOC at various relevant times; and Eric Hession, CEC's Chief Financial Officer, who also served as a director of CEOC for a short period in 2014.

of the forecasted turnaround in the industry.  *See* Ex. 6, Dkt. No. 4220-1, at 62 ("Disclosure

Statement").  Despite those efforts, on January 15, 2015, CEOC filed a voluntary petition for

chapter 11 relief in the Bankruptcy Court for the Northern District of Illinois.

In the course of the bankruptcy, a Special Governance Committee (the "SGC") of CEOC

evaluated whether claims might exist against CEC, its affiliates, the Sponsors, and the directors

and officers of CEC (including the Individuals).  The SGC concluded that such claims do exist

with respect to nine of CEOC's 45 transactions (referred to as the "Challenged Transactions"),

and valued the potential claims at between $3.2 billion and $5.8 billion.  *See* Disclosure

Statement at 43.  The Sponsors, CEC and the Individuals disagree with this conclusion.

In an effort to resolve the potential litigation and put CEOC in a position to emerge from

bankruptcy, CEC agreed to provide contributions to CEOC's reorganization plan that the

Debtors have determined to have an approximate value of over $4 billion; the Sponsors'

contribution to the plan through the dilution of their equity in the surviving company was valued

at over $2 billion.  *See* Disclosure Statement at 1 & Exhibit C to Disclosure Statement.  (As

announced yesterday in Bankruptcy Court, the Sponsors and CEC have since materially

increased their total contributions by over $1 billion.  *See* Ex. 13, Sept. 21 Tr. 3:19-24.)  These

proposed contributions are in return for, and subject to, a release by the Debtors of claims against

CEC and the Individuals (among many others).  Disclosure Statement at 1.  The SGC, supported

by independent advisors, concluded that this $4 billion+ contribution is fair and reasonable

consideration for the settlement of the potential claims.  *See id.* at 4.

Crucially, the SGC's evaluation of the settlement reflected in the Plan did *not* include any

discount for any risk that the claims might not be collectable from the putative defendants

(including the Individuals).  The Debtors determined not to take any such discount in light of

"CEC's strong performance and the number and nature of claims against other entities and individuals with great wealth."  Ex. 7, Dkt. No. 4792-18, at 6.

The Debtors and the vast majority of their stakeholders support the plan and settlement. The Committee — which at this stage is the lone holdout opposing a plan that enjoys the support of $14 billion of CEOC's $18 billion capital structure — believes the settlement is too low and does not reflect the fair value of the Debtors' claims.

The Committee served the subpoenas at issue on June 28, 2016.  The subpoenas demand production of a staggering array of documents covering numerous aspects of the personal and private financial lives of the Individuals, such as tax returns, bank account statements and documentation concerning the ownership of assets, including investments, art, etc.  *See* Ex. 8.

The Individuals objected to the subpoenas.  *See* Ex. 9.  After a number of meet and confers in which the Individuals attempted to reach a compromise by offering to produce information establishing that they benefit from broad indemnities from multi-billion dollar funds and companies (including Apollo and TPG investment funds and Apollo and TPG themselves), in addition to substantial insurance, the Committee moved to compel in an action in the Southern District of New York.  *See* Ex. 10, Dkt. No. 4848 ¶¶ 8-11.

On August 24, 2016, the court transferred the action to the Northern District of Illinois. After briefing, the Bankruptcy Court held a hearing on the Committee's motion to compel on September 14.  At the hearing, the Bankruptcy Court asked counsel for the Debtors for their position regarding the motion.  Debtors' counsel explicitly represented that the Debtors did *not* apply *any* "discount" to the settlement of the potential claims based on collectability risk, and committed that the Debtors would *not* present any evidence on the topic of collectability at the confirmation hearing.  Ex. 2, Sept. 14 Tr. 5:22-6:6.  The Debtors confirmed repeatedly that the

settlement is a "merits-based settlement" and would be defended *solely* on that basis, so that discovery into any defendant's personal assets would be irrelevant. *Id.* at 8:7, 8:24-9:9.3.

Notably, the Bankruptcy Court agreed that if the Debtors would "stipulate" that any judgment could be collected from each of the Individuals, then the court "could deny the motion and send you all home." *Id*. at 7:18-19. Although Debtors' counsel would not stipulate to the open-ended proposition that CEOC "could necessarily collect a full judgment, whatever that judgment would be, against *any one of these particular . . . individuals*" (*id*. at 7:11-15) (emphasis added), counsel was emphatic that the Debtors — which have the burden of proof — would *not* "argue this collectability issue" (*id*. at 7:7-8) and that the Second Lien Committee was "trying to make our confirmation case about something that it's not." *Id*. at 8:11-13.

The Bankruptcy Court nonetheless granted the motion to compel. After characterizing certain parts of the subpoenas as "nuts" (*id*. at 11:2), "crazy" (*id.* at 14:3) and "really overbroad" (*id*. at 11:10-11), the Bankruptcy Court went on to enforce other parts of the subpoenas that are equally problematic. In particular, the Bankruptcy Court concluded that the Individuals would have to produce, among other things, their personal tax returns (*id*. at 13:1) and account statements (*id*. at 13:2-5). In response to counsel's argument that the intrusive discovery was unnecessary in light of the fact that the Debtors did *not* discount the settlement for collectability, the Bankruptcy Court replied that perhaps it should just "deny confirmation now." *Id*. at 22:3-4. The Court concluded: "these folks are going to have to pony up the paper." *Id*. at 23:3-4.

Under the Order entered by the Bankruptcy Court, production "must be completed" by Wednesday, September 28. Ex. 1, Dkt. No. 4925 ¶ 3. Accordingly, on September 16, 2016, the Individuals filed an emergency motion in the Bankruptcy Court for a stay pending appeal and a request for an emergency hearing to be held on the morning of September 19. [Dkt. No.

4987].  The request for the emergency hearing was initially denied by the Bankruptcy Court as premature on the incorrect basis that a stay motion cannot precede a notice of appeal.  [Dkt. No. 4989].  The Individuals immediately filed an amended motion pointing out that, under Bankruptcy Rule 8007(a)(2), a motion for stay to appeal may be made "either before or after the notice of appeal is filed."  [Dkt. No. 4994].  The Bankruptcy Court then granted the request, but set the hearing to take place the afternoon of September 21.  [Dkt. No. 4995].

The Bankruptcy Court denied the motion for a stay on September 21.  The Court concluded that the Individuals are not entitled to a stay because:  (1) the Order is not appealable as of right; (2) leave to appeal should not be granted; (3) the Order is "correct"; and (4) the balance of harms weighs in favor of the Committee, because the Committee needs to prepare for litigation whereas the Individuals' privacy can be guaranteed through a protective order.  Ex. 13, Sept. 21 Tr. 34:8-37:19.  The Court did not mention the mandamus petition.

## RELIEF REQUESTED

Pursuant to Federal Rules of Bankruptcy Procedure 8007 and 8013(d), the Individuals request that the Court enter an emergency stay of the *Order Granting in Part Official Committee of Second Priority Noteholders' Amended Motion to Compel Respondents to Produce Documents and Information in Response to Subpoenas* (the "Order") [Ex. 1, Dkt. No. 4925].

## ARGUMENT

In considering whether to grant a stay, the Court is to consider:  (1) the movant's likelihood of success on the merits of the appeal, (2) if irreparable harm that will result if a stay is denied, (3) the comparative harm to the other side from a stay and (4) the public interest, under a "'sliding scale' approach."  *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).  In this case, all relevant factors support entry of a stay.

**1.      The Individuals have strong grounds to obtain relief from the District Court.**

The Individuals have filed both a motion for leave to appeal (Case No. 16-cv-09097 [Dkt. 2]) and a petition for a writ of mandamus.  (Case No. 16-cv-09059, [Dkt. 1]).  The Court is respectfully referred to those filings, which address the elements for each form of relief.  The Individuals have strong grounds for the relief being sought.

The appeal and the petition address the same controlling question of law:  The Bankruptcy Court concluded that, even where a debtor does not take *any* "discount" for collectability risk in settling a claim, objectors to the settlement may nonetheless take discovery of, and present evidence regarding, the settling defendants' wherewithal to satisfy a judgment.  This conclusion was fundamentally wrong as a matter of law.

As a general rule, "Rule 26 will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence."  *Ranney-Brown Distribs., Inc.* v. *E. T. Barwick Indus., Inc.*, 75 F.R.D. 3, 5 (S.D. Ohio 1977).[3]  Courts in this District have repeatedly enforced this rule, holding that "pre-judgment discovery about a defendant's financial affairs is prohibited when the purpose is to determine whether a final judgment will be collectible rather than to establish an element of liability."  *In re Cowger,* 2014 WL 318241, at *5 (Bankr. C.D. Ill. Jan. 29, 2014) (citing *Piller* v. *Perftech, Inc.*, 2011 WL 2293363, at *3-4 (N.D. Ill. June 9, 2011)), and *Bd. of Educ. of Evanston Tp. High School Dist. No. 202* v. *Admiral Heating and Ventilating, Inc.*, 104 F.R.D. 23, 33 (N.D. Ill.1984)).

---

[3]      *Accord, e.g.*, *In re Ex Parte Shagang Shipping Co., Ltd.*, 2014 WL 1744264, at *2 (S.D.N.Y. Apr. 28, 2014); *Dickson* v. *Nat'l Maint. & Repair of Ky., Inc.*, 2011 WL 2610195, at *2 (W.D. Ky. July 1, 2011); *Lincoln Elec. Co.* v. *MPM Techs., Inc.*, 2009 WL 2413625, at *3 (N.D. Ohio Aug. 5, 2009).

The Committee does not dispute this general rule.  Nor does the Committee dispute that it is seeking pre-judgment discovery regarding collectability.  Moreover, the Committee cannot contest that in *this case*, the Debtors are *not* defending their settlement on the basis that a judgment would not be collectable.  To the contrary, the Debtors have expressly confirmed that they "did *not* discount for collectability" in approving the settlement.  Ex. 2, Sept. 14 Tr. 5:24-25 (emphasis added).  Accordingly, the Debtors will *not* argue at confirmation for any "discounts" based on "collectability" or "that any of these defendants don't have the ability to pay."  *Id.* at 6:6:2-5.  Instead, the Debtors intend to demonstrate that the settlement is fair and equitable based *solely* on the "merits."  *Id.* at 8:7, 8:24-9:9.

On these facts, there is no scenario in which the Committee, as an objector to the settlement, would need to develop or present evidence on the Individuals' financial position.  The Debtors intend to show that the settlement should be approved on the predicate that a judgment would be *fully collectable*.  If the Committee develops evidence confirming that the Individuals can meet a judgment, that would be *consistent* with the predicate for the settlement.  By contrast, if the Committee develops evidence that a judgment is not collectable, that would not undercut the settlement.  Either way the discovery is pointless.  This is no different from any other situation in which an element or a factual issue is *not* contested, and thus discovery regarding that element or issue is *not* allowed.  *See, e.g.*, *Universal Brands, Inc.* v. *Philip Morris Inc.*, 546 F.2d 30, 36 (5th Cir. 1977) (stay of discovery appropriate where "defendants conceded all factual points" on which discovery was sought); *Saenz* v. *Lovington Mun. Sch. Dist.*, 2015 WL 1906140, at *11 (D.N.M. Apr. 6, 2015) (granting motion to stay discovery in part where the plaintiff was "requesting discovery to prove an element that the Defendants have conceded");

*Ruehman* v. *Vill. of Palos Park*, 842 F. Supp. 1043, 1068 n.2 (N.D. Ill. 1993) (agreeing that a party would not have to "provide further discovery" on a factual issue it "wishes to concede").

In nevertheless granting the motion to compel and denying a stay pending appeal, the Bankruptcy Court cited *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.* v. *Anderson*, 390 U.S. 414 (1968), for the proposition that collectability is always a "relevant consideration" in a bankruptcy settlement as to which discovery is appropriate. Ex. 2, Sept. 14 Tr. 15:14-16; Ex. B, Sept. 21 Tr. 35:25-36:8. But the *TMT* decision does not support that proposition. Instead, all that *TMT* does is list various factors that a bankruptcy court may consider in evaluating a completed settlement; among those factors are the "*possible* difficulties of collecting on any judgment." *TMT*, 390 U.S. at 424 (emphasis added). Although that factor is undoubtedly contested in some cases, it is *not* an issue in this case.

The debtor has the burden of proof in showing that a bankruptcy settlement is fair and reasonable. *See, e.g.*, *In re Del Grosso*, 106 B.R. 165, 167-68 (Bankr. N.D. Ill. 1989). To meet that burden of proof, the debtor may seek to contend that the settlement — although lower than it otherwise would have been — is nevertheless fair and reasonable because of concerns about collecting a full judgment for the defendant. In *that* circumstance, because collectability is put at issue by the debtor, discovery as to collectability may be appropriate.

But in *this* bankruptcy settlement, the Debtors' contemporaneous documents establish that CEOC's board evaluated and approved the settlement *without regard* to collectability. The board was told that collectability was no longer "an issue." Ex. 7, Dkt. No. 4792-18, at 6. This was expressly confirmed by Debtors' counsel at the hearing on the motion to compel, who stated unequivocally that the Debtors "did *not* discount for collectability" and would *not* invoke collectability at the confirmation hearing. Ex. 2, Sept. 14 Tr. 5:24-6:5 (emphasis added).

Numerous courts have recognized that evidence regarding collectability is unnecessary and irrelevant where a settlement is predicated solely on the merits of the settled claims. *See, e.g.*, *In re Kollel Mateh Efraim, LLC*, 2013 WL 2149598, at *5 (Bankr. S.D.N.Y. May 16, 2013) (approving contemplated settlement despite lacking information on collectability, as plaintiff's "principal reason for settling [is that] it is his judgment that he will lose," not that the claims are not collectable); *In re Se. Banking Corp.*, 314 B.R. 250, 273 (Bankr. S.D. Fla. 2004) (collectability was "not relevant" in evaluating settlement).[4] This approach makes sense: The reason to evaluate collectability is to determine whether it is appropriate for a debtor to accept a "discount" to fair value on its claims. Where there is no such "discount," the bankruptcy court and any objectors can focus solely on whether the claims at issue are being settled at fair value.

Notably, in one of the primary cases cited by the Committee in its Motion, *In re Fontainebleau*, the bankruptcy court granted a protective order preventing discovery into collectability, upon the proviso that debtors would not invoke collectability at trial. *See* Ex. 11, Dkt. No. 4792-21, at 29:5-10. Here, the court likewise asked counsel for the Debtors whether the Debtors intended to present evidence on collectability, and the answer was clear: "We're not going to be arguing that any of these defendants don't have the ability to pay." Ex. 2, Sept. 14 Tr. 6:3-5. As in *Fontainebleau*, therefore, there was no basis to permit discovery regarding a factor not invoked to support the settlement.

In denying a stay pending appeal, the Bankruptcy Court further concluded that that there was no likelihood of success on the merits here because it is "doubtful" that the Order is

---

[4] *See also In re Remsen Partners, Ltd.,* 294 B.R. 557, 563 (Bankr. S.D.N.Y. 2003) (collectability "not an issue"); *In re WCI Cable, Inc.*, 282 B.R. 457, 470 (Bankr. D. Or. 2002) (collectability "uncontested"); *In re Tech. for Energy Corp.*, 56 B.R. 307, 317 (Bankr. E.D. Tenn. 1985) ("risk of collectibility is not a factor").

appealable under 28 U.S.C. § 158(a).  Even if there were no appeal as of right,[5] as demonstrated

in the Individuals' motion for leave to appeal and petition for leave to mandamus, this Court has

ample authority to consider this appeal.  The requirements for mandamus are met.  *See* Petition

for Writ of Mandamus, Case No. 16-cv-09059, Dkt. 1, at 8-15.  The requirements for leave to

appeal likewise are met:  (1) the underlying order involves a controlling question of law, (2) the

issue is contestable and (3) the resolution of the issue will speed up the litigation.  *Wolf* v.

*FirstMerit Bank, N.A.*, 535 B.R. 772, 775 (N.D. Ill. 2015), *appeal dismissed* (Mar. 25, 2016).

This appeal presents a controlling issue of law regarding bankruptcy settlements, and the issue is

contestable.  In addition, as explained in the Individuals' motion for leave to appeal, a reversal

here will avoid extensive wasteful discovery and litigation of an irrelevant issue.[6]

**2.      Irreparable harm will result if a stay is denied.**

Compliance with the Order will cause irreparable harm to the Individuals.  As the

Bankruptcy Court recognized, once the Individuals are required to comply with the subpoenas

and produce personal and private information, "the cat is sort of out of the bag, and why are we

---

[5]      After stating at the September 14 hearing that "matters of appellate jurisdiction" should be taken up with the "folks upstairs" (Ex. 2, Sept. 14 Tr. 41:13-20), the Bankruptcy Court went on to deny a stay on the grounds, among others, that there was no appellate jurisdiction because there is no final order.  Ex. 13, Sept. 21 Tr. 34:12-19.  But in bankruptcy, the standard for finality is "considerably more flexible" than in other contexts, because there are "many subsidiary matters" decided before a plan is confirmed. *In re Gould*, 977 F.2d 1038, 1041 (7th Cir. 1992).  In this case, the Debtors announced just yesterday that by Friday, September 23, the Debtors expect to have a "global consensus" on a plan or to file a "new amended plan with different terms."  Ex. 13, Sept. 21 Tr. 5:11-16.  Since the plan on which discovery is being taken is about to be withdrawn, a post-confirmation appeal of this "subsidiary matter" will be impossible.

[6]      This case is therefore very different from *In re Dental Profile, Inc.*, a case cited by the Committee that denied leave to appeal an order requiring discovery of parties that allegedly were not "truly separate financial entities" from the debtor.  2010 WL 431590, at *3 (N.D. Ill. Feb. 1, 2010).  Whereas *Dental Profile* involved straightforward discovery regarding a "critical issue" in the bankruptcy case — namely whether the debtor was truly separate and "independent" from other entities (*id.*) — the discovery requested here involves an issue that was *conceded* by the Debtors and will never be litigated.

even prosecuting the appeal." Ex. 2, Sept. 14 Tr. 36:1-3.  Consistent with that observation, courts in various contexts have recognized that compulsory disclosure of sensitive information (in particular, financial information) can cause irreparable harm. *See, e.g.*, *Purdy* v. *Burlington N. & Santa Fe Ry. Co.*, 2000 WL 34251818, at *5 (D. Minn. Mar. 28, 2000) (threat of disclosure of both salary information and social security numbers constituted irreparable harm); *N.Y. Republican State Comm.* v. *Moore*, 1989 WL 124206, at *3 (N.D.N.Y. Oct. 11, 1989) (compliance with financial disclosure requirements in Ethics in Government Act would constitute irreparable harm in the context of a privacy challenge to the Act).[7]

Contrary to the Bankruptcy Court's conclusion, *see* Ex. 13, Sept. 21 Tr. 37:17-22, the fact that there is protective order does not eliminate the harm to the Individuals.  Disclosure of extremely personal and sensitive financial information to even a small group of strangers would infringe upon the Individuals' privacy.  And here, the group of strangers to receive this information is neither small nor disinterested.  Under the governing protective order, which was entered long before the Order at issue, documents that are marked "Advisors' Eyes Only" — the most restrictive category — may be shared with counsel and other advisors for all parties to the bankruptcy case.  *See* Ex. 4, Dkt. No. 1575-1 ¶ 10.  That means that *thousands* of individuals at dozens of major legal and financial firms would have access to the most personal financial information of the Individuals.  Some of the people and firms receiving this information have

---

[7]      *See, e.g.*, *In re Roman Catholic Diocese of Albany, N.Y. Inc.*, 745 F.3d 30, 35-36 (2d Cir. 2014) (discovery of invasive personal information threatened irreparable harm); *In re Lott*, 139 F. App'x 658, 662-63 (6th Cir. 2005) (staying discovery pending appeal on ground that disclosure of privileged information would constitute irreparable harm); *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("Disclosure [of privileged material] followed by appeal after final judgment is obviously not adequate . . . — the cat is out of the bag."); *United States* v. *Dorfman*, 690 F.2d 1230, 1232 (7th Cir. 1982) (order unsealing wiretap materials was immediately appealable in part because the privacy interests protected by the sealing order "would be gone forever" following disclosure).

business with the Individuals, and others are adverse in litigation or business matters.  Moreover,

as the Bankruptcy Court observed on another occasion when material subject to a protective

order was involved, once it comes to trial, "I'm not going to clear the courtroom and shut off the

telephone connection for this."  Ex. 3, Aug. 17, 2016 Tr. 26:12-14.  And the fact is that mistakes

do happen, even when information is produced under confidentiality restrictions.[8]  In this

context, the denial of a stay would invite significant, irreversible harm.

3.      **The comparative harm to the Committee is non-existent or minimal.**

The Bankruptcy Court concluded that the Committee would be prejudiced by a stay

because it needs the information to prepare for the confirmation hearing.  Ex. 13, Sept. 21 Tr.

38:9-20.  But under the applicable scheduling order, the confirmation hearing is scheduled to

begin on *January 17, 2017* — four months from now.  Ex. 12, Dkt. No. 4151 ¶ 24.

As discussed, the Debtors have expressly stipulated that they will *not* advocate for any

"discounts for collectability."  Ex. 2, Sept. 14 Tr. 6:2-5.  As the Debtors' counsel explained, the

Committee is "trying to make our confirmation case about something that it's not," namely the

ability to collect from individual defendants.  *Id*. at 8:11-13.  At confirmation, therefore, the

Committee will have no need to respond to or rebut evidence regarding collectability.

Moreover, even if the Committee had some reason to present evidence at trial regarding

collectability, it is not credible for Committee counsel to claim that a delay in production will be

prejudicial.  The Committee already has extensive discovery regarding the merits of the claims

that are being settled, and it has received additional information from the Individuals regarding

---

[8]      In one highly publicized case in the Northern District of California, unauthorized individuals obtained highly sensitive trade secrets in breach of a protective order.  *See* Transcript, *Apple, Inc.* v. *Samsung Elecs. Co.*, *Ltd.*, No. 11-CV-018646 LHK (N.D. Cal. Oct. 22, 2013), ECF No. 2581.  Upon questioning by the court, the counsel at fault conceded that his firm had "made a mistake."  *Id.* at 45-46.

indemnities and insurance.  If, following an appeal, the Individuals are required to produce more documents, any "harm" could be remedied through simple adjustments to the schedule (including the deposition schedule in October) — all well in advance of the *January* confirmation hearing.   Moreover, given the Debtors' stated intention to file a completely new plan (*see* Ex. 13, Sept. 21 Tr. 5:11-16), it is doubtful that this discovery will be needed anyway.

**4.      The public interest favors a stay.**

The Order is unprecedented.  We are not aware of any other case — and the Committee cites none — in which individuals have been required to produce tax returns and bank statements, along with similar information, prior to judgment and in a situation where a bankruptcy settlement is not predicated on *any* collectability risk.

"When a subpoena seeks the production of an individual's personal financial information, the court must balance the relevance of the information sought against the intrusion into the affected individual's privacy interests."  *In re Glitnir Bank hf*, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011).  In the case of tax returns in particular, "*the public interest* in encouraging the filing by taxpayers of complete and accurate returns" weighs against ordering their production.  *Dunkin' Donuts Franchised Rests. LLC* v. *Grand Cent. Donuts, Inc.*, 2009 WL 973363, at *2 (E.D.N.Y. Apr. 9, 2009) (emphasis added).

Moreover, under the Bankruptcy Court's approach, directors and officers of a debtor corporation, as well as other individuals who receive releases under a plan, will be subject to broad and intrusive discovery — including of their tax returns — whenever there are any unproven allegations of fiduciary or other liability, a rule that will deter settlements and service on the boards of distressed companies.  Such a result is likewise contrary to the public interest.

**CONCLUSION**

For the foregoing reasons, the Individuals' motion for a stay should be granted.

Dated:  September 22, 2016
        Chicago, Illinois

Respectfully submitted,

MCDONALD HOPKINS LLC

By:    \s\David A. Agay
        David A. Agay

300 North LaSalle, Suite 2100
Chicago, Illinois  60654
(312) 280-0111

KASOWITZ BENSON TORRES &
    FRIEDMAN LLP

Marc E. Kasowitz
David S. Rosner
Joshua Greenblatt
Daniel A. Fliman
Edward E. Filusch
*Pro Hac Vice Motions Pending*

1633 Broadway
New York, New York  10019
(212) 506-1700

*Attorneys for David Bonderman and
Kelvin Davis*

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    \s\Richard Lauter
        Richard Lauter

550 West Adams Street
Suite 300
Chicago, Illinois 60661
(312) 463-3437

WACHTELL, LIPTON, ROSEN & KATZ

Marc Wolinsky
Martin J.E. Arms
Emil A. Kleinhaus
*Pro Hac Vice Motions Pending*

51 West 52nd Street
New York, New York  10019-6150
(212) 403-1000

AKIN, GUMP, STRAUSS, HAUER & FELD LLP

Steven M. Pesner
Abid Qureshi
Joseph L. Sorkin
*Pro Hac Vice Motions Pending*

One Bryant Park
New York, New York  10036-6745
(212) 872-1070

*Attorneys for Marc J. Rowan and David B. Sambur*

GOODWIN PROCTER LLP

By:  \s\Richard M. Strassberg
     Richard M. Strassberg
     Daniel P. Roeser

The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 813-8800

*Attorneys for Gary Loveman*

MCDERMOTT WILL & EMERY LLP

By:  \s\J. Christian Nemeth
     Michael A. Pope
     J. Christian Nemeth

227 W. Monroe Street, #4400
Chicago, Illinois  60606-5096
(312) 372-2000

     Timothy W. Walsh
     Monica S. Asher
     *Pro Hac Vice Motions Pending*

340 Madison Avenue
New York, New York  10173-1922
(212) 547-5400

*Attorneys for Eric Hession*